The opinion of the court was delivered by
Nicholls, O. J.
The first question to be considered is whether the defendant, having tendered and offered a witness “ for the purpose of *1564 showing that a State witness named Warren Barnes had shortly after the killing made a statement different from that made upon the stand,” the court ruled correctly in refusing to allow said witness to testify on that subject. The witness Barnes had been examined by the State, cross-examined by the defendant and dismissed. After the State had closed its case in chief, defendant called Barnes to the stand, without any announcement of a discovery, and with no declaration of his purpose, just as he did any other witness summoned by him, and propounded to him the question: “Have you, since the homicide, which occurred April 19, 1896, stated the facts differently from your statement now given on October 19, 1896?” The reasons assigned by the judge were that no proper foundation had been laid for the testimony, and that defendant, by recalling the witness, had made him his own, and could not contradict him. The court said the question asked was too general, as it did not give time nor place, nor detail of different statement.
In the statement made by the clerk annexed to the bill, and which is referred to by the court, that officer declares that defendant: called Warren Barnes to the stand, and asked him if he had not made certain statements (italics ours) in relation to the homicide and warned him of an intention to contradict him if he persisted in a denial, and the defendant then tendered him to the State and afterward dismissed him.”
It will be seen that the statement as made by the clerk differs somewhat from that of the court, the latter giving the precise question asked of Barnes, while the former says defendant asked him if he had not made “certain statements” in relation to the homicide.
Thsugh no mention is made of the fact that the statement of the •clerk was made by authority and order of court, we presume it was in fact so made, as it is referred to by the court in connection with the bill of exception. The clerk instead of opening a special note of evidence or “taking down” as they occurred, as a scribe, “ the facts upon which the bill was reserved,” and taking down the testimony of Barnes on the trial, the specific questions asked and the specific objections urged, dealt with the matter by way of “ narrative.” We do not think that Act No. 113 of 1896 contemplated that “ the facts on which the bill was reserved ” should be brought up in that way. In this instance there is no “ material ” difference between the court’s statement and that of the clerk.
*1565 We concur in the opinion of the District Court that the question propounded by the defendant to Barnes, on which he bases his right to have introduced testimony to show that he had made statements different from those made by him on the stand, was entirely too general. “ A frequent mode of impeaching the credit of a witness ” says Rapalje on Witnesses (Secs. 203, 205) is to sh.,w that he has made statements out of court on the same subject inconsistent with or contrary to what he swears at the trial. In order to show this he must be previously cross-examined as to such alleged statements so as to apprise him of the time, place and persons involved in the supposed contradiction (see as to this State vs. Johnson, 35 An. 871), and such statements must also be material to the question at issue. The two statements must conflict in some way. The one made out of court must be inconsistent with some facts stated by the witness in his testimony or with its general drift, but if the two accounts are substantially inconsistent that is all that is required.” (Citing De Sailly vs. Morgan, 2 Esp. 691; Christian vs. Coombe, Id. 489; 2 Philips on Evidence, 959). It has been held that “ proof of a different but not inconsistent statement is inadmissible ” (Martin vs. Farnham, 25 N. H. 195; Hall vs. Simmons, 24 Texas, 227).
The same author, writing on the same subject (Sec. 209) says: “ The books teem with applications of the proviso to the rule we have just been considering, that the statements as to which a witness can be contradicted must be material and relevant to the issue on trial; if the witness is cross-examined as to former statements which are impertinent or immaterial to the issue, his answers are conclusive, and can not be contradicted for the purpose of impeaching him.”
In the case at bar we have been informed neither as to what Barnes testified to at the trial, nor what the statements were which defendant claims were different from those made by him on the trial. His testimony may have been purely on immaterial, irrelevant or collateral matters of no moment, and it would be a very unsafe practice to reverse a judgment or verdict upon a mere presumption or possibility that the matters testified to, and those which were sought to be introduced with a view of discrediting the witness, were of such a character as to have resulted in an injury to the accused. Barnes’ testimony could have been taken down under the act of 1896, or it could at least have been recited in the bill of exceptions, *1566 so as to bring us to a knowledge of the importance or materiality of the error of the District Judge, if error he had made, in fact committed.
We see no error in the instruction given by the court to the jury that no provocation by words only, however opprobrious, will mitigate an intentional killing so as to reduce the killing from murder to manslaughter.
The judge informs us that the homicide was committed with a dangerous weapon, and that no blows were struck.
The reasons assigned by the District Court for refusing the special charge asked, which refusal is the subject of the third bill of exceptions, justified his ruling.
Por the reasons assigned herein the judgment appealed from is affirmed.