**(107 So. 481)**

**No. 27636.**

## STATE v. ROSS.

(Feb. 1, 1926. Rehearing Denied March 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law ⬉1160—Bill of exceptions to overruling motion for new trial on ground that verdict was contrary to law and evidence presents nothing for review.**

Bill of exceptions to overruling motion for new trial, on ground that verdict was contrary to law and evidence, presents nothing for review.

2. **Criminal law ⬉661—In murder prosecution, admission of portion of conversation of accused with his sister, containing threat against deceased, held not erroneous.**

In murder prosecution, admission of portion of conversation between accused and his sister, consisting of threat against deceased, *held* not erroneous, though witness did not know balance of conversation, as accused, if not satisfied with witness' version, could have corrected it or completed it with his own testimony.

3. **Criminal law ⬉1092(11)—Prosecuting officer cannot be compelled by trial judge to make up bill of exceptions for accused in criminal case (Act No. 113 of 1896).**

In view of Act No. 113 of 1896, trial judge cannot compel prosecuting officer to re-examine state witness in order to make up bill of exceptions for accused.

4. **Homicide ⬉158(2)—Testimony of threats made by accused two years prior to homicide held admissible.**

In murder prosecution, testimony as to threats made by accused against deceased about two years prior to homicide *held* not inadmissible as being too remote, witness later having testified that on two subsequent occasions, about six months apart, accused had said that deceased ought to be killed.

5. **Witnesses ⬉379(2)—In murder prosecution involving issue of self-defense, exclusion of testimony offered to impeach denial of statement of state witness on cross-examination that deceased had not threatened accused held reversible error.**

In murder prosecution, involving issue of self-defense, where state's witness, on cross-examination, had denied stating in conversation with third parties that deceased had threatened life of accused, exclusion of testimony of third

parties for purpose of impeachment *held* reversible error.

6. **Criminal law ⬉683(1)—Where one pleading self-defense testified to consulting doctor for headache from alleged blow by deceased, evidence that accused had formerly suffered from sunstroke likely to cause headaches held proper rebuttal.**

In prosecution for murder, where accused pleaded self-defense, and testified as to consulting doctor for treatment of headache, claimed to have resulted from blow from club in hands of deceased, and it appeared there were no marks, cuts, or bruises on his head, testimony that several years prior to homicide accused had suffered sunstroke, and that man who has had sunstroke is likely to have headaches brought on by excitement, *held* proper rebuttal.

7. **Criminal law ⬉763, 764(6)—Charge that allowing wife to permit hoodoo doctor to practice upon her was not excuse for murder or to reduce homicide from murder to manslaughter held not prejudicial as comment on evidence.**

In prosecution for murder on theory that accused killed deceased because latter believed in hoodooism, and allowed hoodoo doctor to practice on his wife, charge that allowing hoodoo doctor to practice upon wife was not excuse for killing, nor sufficient to reduce homicide from murder to manslaughter, *held* not objectionable as comment on evidence, especially as court fully charged upon self-defense theory of accused.

Appeal from Fourteenth Judicial District Court, Parish of Beauregard; Thomas F. Porter, Jr., Judge.

Jim Ross was convicted of manslaughter, and he appeals. Reversed, and remanded for new trial.

P. L. Ferguson, of Leesville, for appellant.

Percy Saint, Atty. Gen., and John J. Robira, Dist. Atty., and S. H. Jones, Asst. Dist. Atty., both of Lake Charles (Percy T. Ogden and E. R. Schowalter, Asst. Attys. Gen., and Mark C. Pickrel, of Oakdale, of counsel), for the State.

LAND, J. The defendant, indicted for murder, was convicted of manslaughter, and relies for the reversal of the conviction and sentence against him upon six bills of exceptions.

## Bill No. 1.

[1] This bill was reserved to the overruling of a motion for a new trial, based upon the ground that the verdict is contrary to the law and the evidence, and fails to present any question of law to this court for review.

## Bill No. 2.

[2] A state witness testified that she heard a part of a conversation between the defendant and his sister, while they were working together in the field, and that the only thing she heard was a threat made by defendant against the deceased.

Counsel for defendant objected to this testimony, for the reason that the witness did not know the substance of all of the conversation had at the time.

The overruling of this objection by the trial judge was proper, for the reason assigned by him, that, if the defendant was not satisfied with this witness' version of the conversation, he could have corrected it, or completed it with his own testimony.

While the defendant did not testify in the case, his sister was called as a witness in his behalf, and denied that defendant made such threats as testified to by the state witness. State v. Oliver, 10 So. 201, 43 La. Ann. 1003; State v. Allen, 35 So. 495, 111 La. 154, 158.

[3] The complaint by defendant that the trial judge refused to compel the district attorney to re-examine the state witness, in order that her testimony might be taken down and annexed to the bill reserved, is without any foundation upon which to rest, as the court permitted counsel for defendant to re-examine the witness in his own way, and to have her testimony reduced to writing.

A trial judge is without authority to compel a prosecuting officer to make up a bill of exception for a defendant in a criminal case under Act No. 113 of 1896, which secures to a defendant the right only to have taken down by the clerk, under the order of the court, the facts upon which the bill is predicated.

## Bill No. 3.

[4] A state witness testified as to threats made by the defendant in a conversation with the witness about two years prior to the homicide.

Counsel for defendant objected to the testimony on the ground that the time of the threats was too remote. This objection was overruled, and the witness later testified that on two subsequent occasions, about six months apart, defendant had said that Medley, the deceased, had had an old "hoodoo doctor" at his place treating his wife, and that "a man that low down ought to be killed."

The objection made by counsel for defendant went rather to the effect than to the admissibility of the testimony. The overruling of the objection was proper.

## Bill No. 4.

[5] A state witness testified that defendant had made certain threats against the deceased, and, in order to impeach this witness, counsel for defendant asked on cross-examination if he had not stated to Welborn and Alston, in a conversation with them, that deceased had threatened to take the life of defendant. The state witness answered that he had no recollection of it. The testimony of Welborn and Alston, when offered for the purpose of impeachment, was ruled out on the objection of the state.

The trial judge seeks to justify this ruling upon the following grounds:

(a) A witness may not be impeached unless he denies positively making the statement.

(b) A witness may not be impeached on an irrelevant and immaterial matter.

As the defendant was charged with murder, manifestly proof of threats *made by him against the deceased* was a very material matter, as tending to show malice aforethought, an essential element of the crime of murder.

The testimony as to threats made by defendant against the deceased was also a very

material matter, as defendant had pleaded self-defense in the case, and such testimony tended to show that defendant was the aggressor, thereby rebutting and weakening defendant's plea of self-defense. The defendant offered to prove by these two witnesses that the testimony of the state witness was false, for the reason that he had made to them a statement directly opposite to his testimony on the trial, viz. that the *deceased* had threatened to kill the defendant.

The question in the case is not as to the relevancy or materiality of threats offered as substantive evidence by the defendant, but as to the proof of threats offered as substantive evidence by the state, without the right of contradiction by the defendant of the state witness.

It is immaterial that the defendant was found guilty of manslaughter, as the testimony of the state witness as to threats was offered on the trial of the defendant under an indictment for murder, and the relevancy and materiality of such testimony must therefore be determined from this aspect of the case.

In State v. Johnson, 17 So. 789, 47 La. Ann. 1225, it was contended that, as the witness did not positively deny that he had made the statements, he could not be impeached. The court said:

"If, however, the witness does not recollect, proof of the statement should be admitted, when it is equivalent to a contradiction."

As said by Parke, B., in Crowley v. Page, an English case:

"If such were not the rule, a witness who says he did not remember could never be contradicted."

See, also, State v. Lewis, 11 So. 572, 44 La. Ann. 958; 40 Cyc. 2737; Rapalje on the Law of Witnesses, par. 204; Underhill's Crim. Ev. (3d Ed.) pp. 543, 544.

As defendant has suffered, apparently, a substantial injury by the ruling out of the impeaching testimony of these two witnesses, it becomes our duty to annul the conviction and the sentence and to remand the case for a new trial.

### Bill No. 5.

[6] Shortly after the killing, the defendant claimed that he consulted a doctor for the treatment of a headache, which he declared had resulted from a blow received from a club in the hands of the deceased, and offered the testimony of the doctor who had treated him.

It appearing that there were no marks, cuts, or bruises on defendant's head, the state offered the testimony of a physician to prove that several years prior to the homicide he had treated defendant for a sunstroke, and that a man who has had sunstroke is likely to have headaches brought on by excitement.

This testimony was objected to by counsel for defendant, for the reason that the testimony of the doctor, appearing as a witness on behalf of the prosecution, was not in rebuttal of anything brought out in chief.

In our opinion, the state's testimony was clearly admissible to rebut the defendant's statement about the cause of his headache.

### Bill No. 7.

[7] The trial judge charged the jury as follows:

"I charge you that one may not kill another because that other permitted a hoodoo doctor to practice upon that other's wife, nor will such reason reduce a homicide from murder to manslaughter. Should you find that Ross killed Medley, and that there was no necessity for the killing, and that it was without provocation, but that Ross killed Medley because Medley believed in and practised hoodooism, and allowed a negro hoodoo doctor to practice on his (Medley's) wife, the defendant would be guilty of murder."

We fail to find that this charge is a comment upon the facts of the case, as contended by counsel for defendant. As appears from the per curiam to this bill, it was the state's theory of the homicide that defendant killed

Medley, because he believed in "hoodooism" and allowed a negro "hoodoo" doctor to practice on his (Medley's) wife.

The defendant offered testimony to show that the reason for the threats, proven by the state on the part of defendant against deceased, was because deceased was a patron of "hoodooism," and allowed the "hoodoo" doctor to attend his (Medley's) wife.

It appears also from the per curiam to this bill that counsel for defendant argued to the jury that, under this state of facts, it was the most natural thing in the world for any man to threaten to kill Medley, as defendant had done, and that any one of the jurors, under the circumstances, would have made the same threat. The theory of the defendant as to the killing was that it was done in self-defense. The court charged the jury fully as to the law of self-defense. As we view the charge, it is unobjectionable, as the trial judge charged the law applicable to the facts, both as to the state's and defendant's theory of the case.

The judgment appealed from, however, must be reversed, for the reasons assigned under bill of exceptions No. 4.

It is therefore ordered that the conviction and sentence appealed from be annulled and set aside, and it is now ordered that this case be remanded to the court below for a new trial.